**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

MAHAN MOHAMMADI MOTAHARI and
MOZHAN MOHAMMADI MOTAHARI,

Petitioners,

v.

VERNON LIGGINS,
*Acting Field Office Director,*
*Baltimore Field Office,*
*Immigration and Customs Enforcement*,
TODD L. LYONS,
*Acting Director,*
*Immigration and Customs Enforcement*, and
MARKWAYNE MULLIN,
*Secretary of Homeland Security*,

Respondents.

Civil Action No. 26-1572-TDC

**MEMORANDUM OPINION**

Petitioners Mahan Mohammadi Motahari and Mozhan Mohammadi Motahari have filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, in which they challenge Respondents' imposition of conditions of release after an immigration judge ordered their release following a bond hearing. After the Petition was fully briefed, Petitioners submitted a Notice of Additional Authority and Status Report, as well as a Motion to Expedite the Ruling. Because the Motion to Expedite did not comply with § III.A.1 of this Court's Case Management Order, that Motion will be denied. For the reasons set forth below, the Petition will be GRANTED.

**BACKGROUND**

Petitioners Mahan Mohammadi Motahari and Mozhan Mohammadi Motahari, who are sisters, are natives and citizens of Iran who have lived in Maryland for approximately four years.

In 2022, they entered the United States without inspection after fleeing Iran and now have applications for relief from removal pending in the Immigration Court in Hyattsville, Maryland ("the Hyattsville Immigration Court").

On November 27, 2025, Petitioners went on a family trip to St. Thomas in the United States Virgin Islands. When returning to Maryland on December 1, 2025, they were both arrested, placed in an immigration detention center in Florida, and issued Notices to Appear for removal proceedings ("NTAs"). After Petitioners each filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Florida, that court ordered that they each receive a bond hearing pursuant to 8 U.S.C. § 1226(a). *See Mahan Mohammadimotaheri v. Ripa*, No. 25-cv-62502-RS (S.D. Fla. Jan. 12, 2026) (ECF No. 12); *Mozhan Mohammadimotaheri v. Ripa*, No. 25-cv-62506-RS (S.D. Fla. Jan. 9, 2026) (ECF No. 22).

In accordance with the court's orders, an immigration judge ("IJ") in Miami, Florida conducted bond hearings for both Petitioners on January 16, 2026. The IJ ordered that each Petitioner be released upon the posting of a $10,000 bond, with the additional directive that there be "No Further Arrests" in both cases. IJ Orders at 1-4, Pet. Ex. 1, ECF No. 1-1. Mozhan Mohammadi Motahari was released on January 17, 2026, with no further conditions initially imposed by the United States Immigration and Customs Enforcement ("ICE") office in Florida. On January 20, 2026, however, she was enrolled in the Intensive Supervision Appearance Program ("ISAP").

Mahan Mohammadi Motahari was released on January 21, 2026, through an Order to Release on Recognizance, but she was also enrolled in the Alternatives to Detention ("ATD") program. Though the ATD and ISAP programs are different in certain ways, both require that an

enrollee be subjected to constant GPS monitoring, regular check-ins with ICE, and travel restrictions.

On January 23, 2026, two days after her release, Mahan Mohammadi Motahari filed a Motion to Ameliorate Conditions of Release with the Immigration Court in Miami, Florida through which she sought to be released from the ATD program, but her motion was rejected on the grounds that it was filed in the "Incorrect Filing Location (Wrong Immigration Court)." Pet. ¶ 33, ECF No. 1; 1/23/26 Rejected Filing at 1, Pet. Ex. 5, ECF No. 1-5. Mahan Mohammadi Motahari also filed a Motion to Ameliorate Conditions of Release in the Hyattsville Immigration Court, which was denied based on the IJ's conclusion that "[i]t would be more appropriate for the judge who conducted the bond hearing and ordered [her] release to consider this motion." IJ Orders at 2, Pet. Ex. 6, ECF No. 1-6.

Also on January 23, 2026, Mozhan Mohammadi Motahari filed a similar Motion to Ameliorate Conditions of Release in the Hyattsville Immigration Court in which she sought to be released from the ISAP program, but that motion was denied on February 10, 2026, after the IJ found that "there [was] another court where this request is deemed more appropriate under the regulations." *Id.* at 6. Petitioners have since made multiple unsuccessful requests to ICE for assistance in removing these conditions.

## DISCUSSION

In the Petition, Petitioners seek to be relieved of the requirement to follow the conditions of release required by the ATD and ISAP programs. As relevant here, § 2241 provides that a district court may grant a writ of habeas corpus if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An individual is in custody when that person "is subject to restraints not shared by the public generally," such as "the

obligation to appear at all times and places as ordered." *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351 (1973) (citations omitted). Although detention is the archetype of custody, an individual may be found to be in custody when conditions "significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). The ATD and ISAP programs, which impose such conditions, constitute custody for purposes of a habeas petition. *See, e.g.*, *Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 68 (D. Mass. 2025); *Lazaro Lazaro v. Baker*, No. 25-cv-3162-PX, 2026 WL 1256054, at *2 (D. Md. May 7, 2026).

Petitioners argue that these conditions should be removed because ICE's unilateral imposition of conditions beyond those imposed by the IJ violates their substantive due process rights and the doctrine that an agency's failure to follow procedural safeguards required under its own regulations may warrant invalidation of the agency action, as established in *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–67 (1954) ("the *Accardi* doctrine"). Respondents argue that ICE possesses the authority to impose conditions of release on individuals released on bond by an IJ. Specifically, Respondents argue that although "Immigration Judges have the authority to specifically 'detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released,'" Ans. at 4, ECF No. 7 (quoting 8 C.F.R. § 1236.1(d)(1)), "it is ICE that has the ability to set the conditions of the release on bond," *id.*

In their *Accardi* doctrine argument, Petitioners assert that the ATD and ISAP program conditions must be removed because in imposing them, Respondents have "failed to abide by [their] own operating regulations" relating to custody determinations. Pet. ¶ 57. Under the *Accardi* doctrine, based on principles of procedural due process, "an agency's failure to afford an individual

procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination" upon a showing of prejudice. *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999). Prejudice can be presumed when the regulations at issue consist of "an entire procedural framework, designed to insure the fair processing of an action affecting an individual." *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986) (approving of this analysis); *Morgan*, 193 F.3d at 267 (same).

As relevant here, noncitizens detained under 8 U.S.C. § 1226(a) may be released on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General." 8 U.S.C. § 1226(a)(2)(A). Pursuant to the Immigration and Nationality Act ("INA") and applicable regulations, a detained noncitizen is afforded "three opportunities to seek release from detention" through which the noncitizen must "prove that he or she is not a danger to the community or a flight risk" in order to be released. *Miranda v. Garland*, 34 F.4th 338, 346–47 (4th Cir. 2022). First, an immigration officer "is authorized to release [an] alien if the officer is satisfied that the alien is not a danger to the community or a flight risk," and if the immigration officer decides to release that individual, the officer "may set a bond or place conditions on the alien's release." *Miranda*, 34 F.4th at 346 (citing 8 C.F.R. § 236.1(c)(8)). Second, if the "officer denies bond, sets bond at an amount the alien believes is too high or sets alternative conditions to bond the alien contends are unreasonable," the noncitizen "may appeal the officer's bond determination to an immigration judge." *Id.* (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)). Third, "if an alien is not satisfied with the immigration judge's decision," the individual "may appeal to the Board of Immigration Appeals [("BIA")] for another review." *Id.* at 346–47 (citing 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3)).

This three-step process is thus a "sequential framework" that "provide[s] ICE with authority to *initially* set conditional parole and where the noncitizen does not seek review of the detention before an IJ." *Orellana Juarez*, 788 F. Supp. 3d at 69. ICE's authority to set conditions of release, however, ends once the noncitizen has appealed the initial custody determination to an IJ, and the IJ orders otherwise. *See id.* ("Respondents may not impose additional conditions *after an IJ has ordered release on a bond and set conditions of release.*"). As the BIA has recognized, the statutory authority to release noncitizens on bond during removal proceedings and to determine the conditions of release under § 1226(a) has been delegated to immigration judges, not to ICE. *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006). Numerous federal district courts have thus concluded that once a custody determination is appealed to an IJ, it is the IJ, and not ICE, that has the authority to impose conditions. *See, e.g.*, *Orellana Juarez*, 788 F. Supp. 3d at 70 (concluding that "Petitioner may not be subjected to conditions of release that are not consistent with the terms as set by the Immigration Judge after the bond hearing"); *N-N- v. McShane*, 813 F. Supp. 3d 496, 500–01 (E.D. Pa. 2025) (holding that "the regulations do not permit ICE to impose additional conditions without utilizing the administrative appeal process"); *Gonzalez Mojica v. Lyons*, No. 25-13783-ADB, 2026 WL 266502, at *1 (D. Mass. Feb. 2, 2026) ("[T]here is nothing in the [INA's] procedural scheme that authorizes ICE to impose additional conditions [of release] following the immigration judge's decision."); *da Silva v. LaForge*, No. 25-17095-EP, 2026 WL 45165, at *4 (D.N.J. Jan. 7, 2026) (holding that "ICE violated its own regulations when, instead of appealing the Immigration Court's Order to the BIA as it should have, it imposed additional restrictions on Petitioner's supervised release").

In opposing the Petition, Respondents note that the regulation describing the IJ's authority at a bond hearing does not explicitly reference the authority to decide whether to impose conditions

of release. *See* 8 C.F.R. § 1236.1(d)(1). The United States Supreme Court, however, has read this provision and the other related regulations as including such authority. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) ("If DHS denies the alien's request" for release, "the alien may request a bond hearing in front of an immigration judge by filing an application for a change in the alien's detention conditions") (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)); *see also Miranda*, 34 F.4th at 346 ("If an immigration officer denies bond, sets bond at an amount the alien believes is too high or sets alternative conditions to bond the alien contends are unreasonable, an alien may appeal the officer's bond determination to an immigration judge"). Further, 8 C.F.R. § 1236.1(d)(1) provides that "the immigration judge is authorized to exercise the authority in section 236 of the Act," and that provision, 8 U.S.C. § 1226, gives ICE the authority both to release a detainee on bond and to impose conditions of release. The conclusion that the IJ has the authority to decide on what conditions of release, if any, to impose upon a grant of bond at the second step of the framework is therefore consistent with the relevant regulations. *See* 8 U.S.C. § 1226(a)(2); *N-N-*, 813 F. Supp. 3d at 500. An alternative reading that permits ICE "to impose additional conditions after an immigration judge has ordered release and set conditions renders the administrative adjudicatory process null." *N-N-*, 813 F. Supp. 3d at 500.

Respondents also assert that "ICE has created the [ATD and ISAP programs] to be able to confirm compliance and contact with the influx of non-citizens that have come into contact with the removal process." Ans. at 4. As discussed above, however, ICE's ability to use these tools unilaterally is limited to the first step of the sequential framework. If Respondents believed that the measures set forth in the ATD or ISAP programs were necessary to ensure Petitioners' appearance at immigration proceedings, they had multiple lawful methods to seek their imposition. At the first stage of the sequential framework, the initial custody determination, Respondents could

have released Petitioners subject to those conditions. 8 C.F.R. § 236.1(c)(8). When the matter was appealed to an IJ, Respondents could have provided sufficient evidence at the bond hearing to demonstrate that the measures were necessary. *Id.* § 1003.19(d). Respondents also could have appealed the decision of the IJ to the BIA in the time frame required. *Id.* § 1236.1(d)(3)(i). Rather than pursuing any of these lawful means, Respondents circumvented the regulatory process.

As has been recognized by another court, the theory "that ICE may initially determine release conditions," and a noncitizen "may appeal those conditions to an immigration judge," "yet ICE can thereafter impose additional release conditions notwithstanding the immigration judge's order, all while never having advocated for such conditions before the immigration judge or appealed to the BIA," would render the administrative adjudicatory process "meaningless and superfluous." *N-N-*, 813 F. Supp. 3d at 501. Where the steps set forth in the regulations are plainly designed to provide procedural safeguards in relation to the fair processing of an action affecting an individual, Respondents' failure to comply with their own regulations violated the *Accardi* doctrine. The Court will therefore grant the Petition and direct that Petitioners be immediately unenrolled from the ATD and ISAP programs and, in accordance with the IJ's orders, remain on release with no conditions of release other than the $10,000 bonds and no further arrests of either Petitioner. The Court need not and will not address Petitioners' remaining arguments.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Petitioners' Motion to Expedite, ECF No. 11, will be DENIED, and the Petition for a Writ of Habeas Corpus, ECF No. 1, will be GRANTED, as specified in the accompanying Order.

Date: September 9, 2026

THEODORE D. CHUANG
United States District Judge